IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

13-1636, 14-1014

JOHN R. GAMMINO,

Plaintiff-Appellant,

v.

SPRINT COMMUNICATIONS COMPANY, L.P.,
SPRINT SPECTRUM L.P., and VIRGIN MOBILE USA, L.P.,

Defendants-Cross-
Appellants.

Appeal from the United States District Court for the
Eastern District of Pennsylvania in No. 10-cv-2493,
United States District Judge Cynthia M. Rufe

**OPENING BRIEF AND ADDENDUM OF
PLAINTIFF-APPELLANT JOHN R. GAMMINO**

Kevin R. Casey
Kevin W. Goldstein
STRADLEY RONON STEVENS
& YOUNG, LLP
30 VALLEY STREAM PARKWAY
Malvern, PA 19355
(610) 640-5800

W. Mark Mullineaux
ASTOR WEISS KAPLAN & MANDEL LLP
200 South Broad Street, Suite 600
Philadelphia, PA   19102
(215) 893-4956

*Attorneys for Plaintiff-Appellant*

DATED:   JANUARY 2, 2014

## CERTIFICATE OF INTEREST

Counsel for plaintiff-appellant certify the following:

1.    We represent John R. Gammino.

2.    The name of the real party in interest (if the party names in the caption is not the real party in interest) represented:    Not Applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented: None.    Mr. Gammino is an individual.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented in trial court or agency or are expected to appear in this court are:

Stradley Ronon Stevens & Young, LLP

Kevin W. Goldstein
Kevin R. Casey
Gina Stowe

Astor Weiss Kaplan & Mandel LLP

W. Mark Mullineaux
Brian Discount (no longer with the firm)

Date:    January 2, 2014

Respectfully submitted,

Stradley Ronon Stevens &
Young, LLP

By:    /s/ Kevin W. Goldstein
Attorneys for Plaintiff-Appellant

# 2007138   v. 1

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................ 1

Table of Abbreviations .................................................................... 4

Statement of Related Cases................................................................ 5

Jurisdictional Statement ................................................................... 6

Statement of the Issues.................................................................... 7

Statement of the Case ...................................................................... 8

Statement of the Facts..................................................................... 10

Summary of the Argument................................................................ 15

Standard of Review .......................................................................... 18

Argument.......................................................................................... 19

I.    The District Court Erred in Finding that the '125 Patent
      Requires the Blocking of All International Access Calls........................... 19

      A.    The Plain Language of the '125 Patent Claims Shows
            that the '125 Patent Invention Does Not Teach the
            Blocking of All International Access Calls...................................... 19

      B.    Gammino did not unequivocally disavow a claim
            construction that a user may elect to prevent some and
            not all international access calls ..................................................... 28

            1.    Gammino disclosed to the PTO actual use of the
                  invention by TSG and New York Telephone of

blocking just seven of the 636 types of international access calls .................................................. 29

2.    During Patent Prosecution, Gammino filed with the PTO three sets of amendments to his application that provide for claims which prevent just a few of the 636 types of international access calls.............................................................................. 31

3.    The District Court's holding that the patent requires the blocking of all "international access calls" is incorrectly based on information regarding "international calls" and not "international access call" evidence........................................ 33

4.    Mr. Gammino's explanations made during the prosecution of the '125 patent, about how his inventive method could operate were taken out of context by the District Court, and such explanations are not an unequivocal disavowance by the patentee..................................................... 35

II.    The District Court Erred in Finding that the '125 Patent Processor Or Interface Unit Must Be Located With the Telephone And Outside of the External Telephone Network ................... 39

III.    The District Court Erred in Not Considering the Claims, Specification and Other Evidence that Conclusively Proves that "Signal Value" Includes Analog, Electrical and Digital Signals .............. 46

A.    The District Court erred in denying the motion to amend one (out of 10) proposed constructions ........................................... 48

B.    The District Court Did Not Follow the Law that the Actual Meaning of a Claim Term Supersedes the Parties' Proposed Definitions ......................................................... 51

Conclusion................................................................................. 53

iv

# ADDENDUM

Order Dismissing Defendants' Fees Motion Without Prejudice So
Appeal May Be Resolved (Dkt. 178)

Judgment Order, dated August 23, 2013 (Dkt. 161)

Claim Construction Order, dated July 2, 2013 (Dkt. 154)

Memorandum Opinion and Claim Construction Order, dated July 2,
2013 (Dkt. 153)

U.S. Patent No. 5,809,125 granted to John R. Gammino for Method
and Apparatus for Intercepting Potentially Fraudulent Telephone

# TABLE OF AUTHORITIES

<u>Page</u>

## <u>Cases</u>

*Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007) ............................ 21

*Alcatel USA, Inc. v. Tekelec, Inc.*,
    2002 U.S. Dist. Lexis 28607 (E.D. Tex 2002) ........................................... 52

*Andersen Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007) ................................................................. 21

*Applied Medical Research Corp. v. U.S. Surgical Corp.*,
    448 F.3d 1324 (Fed. Cir. 2006) ................................................................. 41

*Baldwin Graphic Sys., Inc. v. Siebert*,
    512 F.3d 1338 (Fed. Cir. 2008) ................................................................. 24

*Blackboard, Inc. v. DESIRE2LEARN INC.*,
    574 F. 3d 1371 (Fed Cir. 2009) ................................................................. 51

*Cheetah Omni LLC v. Samsung Electronics America, Inc.*,
    2009 U.S. Dist. Lexis 119541 (E.D. Tex. 2009) ........................................ 52

*Chemi Spa v. Glasxosmithkline*,
    385 F.Supp. 2d 514 (E.D. Pa 2005) ........................................................... 35

*Chimie v. PPG Indus.*, 402 F.3d 1371 (Fed.Cir. 2005) ...................... 18, 29, 36, 38

*CNET Networks Inc. v. Etilize, Inc.*,
    547 F. Supp. 2d 1055 (N. D. Cal 2008) ................................................ 51, 52

*Cooper Notification, Inc. v. Twitter, Inc.*,
    2013 WL 4611752 (Fed. Cir. 2013) .......................................................... 18

*Evans Products Co. v. West American Ins. Co.,*
　　736 F. 2d 920 (3rd Cir. 1984) ................................................... 49

*Gammino v. Southwestern Bell Telephone, L.P.,*
　　512 F.Supp. 2d 626 (N.D. Texas 2007) ....................... 4, 9, 19, 34

*Gammino v. Southwestern Bell,*
　　267 Fed. Appx. 949 (Fed. Cir. 2008) ............................................ 9

*Glass v. Philadelphia Elec. Co.,* 34 F.3d 188 (3d Cir. 1994) ............ 18

*Illinois Tool Works Inc. v. MOC Products Company, Inc.,*
　　2011 U.S. Dist. Lexis 50934 (S. D. Cal 2011) ............................ 52

*Jack Guttman, Inc. v. Kopykake Enters., Inc.,*
　　302 F.3d 1352 (Fed. Cir. 2002) ................................................. 52

*JVW Enters., Inc. v. Interact Accessories, Inc.,*
　　424 F.3d 1324 (Fed.Cir. 2005) ................................................. 40

*Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc.,*
　　248 F.3d 1303 (Fed. Cir. 2001) ................................................. 41

*Markman v. Westview Instruments, Inc.,*
　　517 U.S. 370, 391, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) ...... 18

*Network Commerce, Inc. v. Microsoft Corp.,*
　　422 F.3d 1353 (Fed. Cir. 2005) ................................................. 52

*Norian Corp. v. Stryker Corp.,* 432 F.3d 1356 (Fed. Cir. 2005) ......... 25

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............. *passim*

*Salazar v. Procter & Gamble Co.,*
　　414 F.3d 1342 (Fed. Cir. 2005) ................................................. 29

*Samsung SDI Co., Ltd. v. Matsushita Electric Industrial Co., Ltd.,*
　　2006 U.S. Dist. Lexis 98633 (W.D. Pa. 2006) ........................... 52

2

*Sprint Communications Company L.P. v.*
    *Big River Telephone Company, LLC,*
    2009 U.S. Dist. Lexis 58161 (D. Kan. 2009) ...................................... 51, 52

*Superguide Corp. v. DirecTV Enterprises, Inc.,*
    358 F.3d 870 (Fed. Cir. 2004) .................................................... 45

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ................................................... 20

## Rules

Fed.R.Civ.P. 15(a)(2) ...................................................... 49

Fed.R.App.P. 32(a)(7)(C) ................................................... 54

## Statutes

15 U.S.C. § 285 ............................................................ 6

28 U.S.C. § 1332(a) ....................................................... 6

28 U.S.C. § 1338(a) ....................................................... 6

35 U.S.C. § 112, sixth paragraph ...................................... 40, 44

# 2007138   v. 1

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| '125 patent | means U.S. Patent No. 5,809,125 |
| App-xx | means Appendix page number for the cited reference |
| Bimonte | means U.S. Patent No. 4,577,066 |
| Dkt. xx | means Docket Number for the proceedings below in the United States District Court for the Eastern District of Pennsylvania |
| District Court | means the United States District Court for the Eastern District of Pennsylvania |
| Federal Circuit | means the United States Court of Appeals for the Federal Circuit |
| Gammino | means plaintiff-appellant-inventor John R. Gammino |
| MTSO | means Mobile Telephone Switching Office |
| N.T. | means Notes of Transcript |
| SWB court | means the United States District Court for the Northern District of Texas entering the decision in *Gammino v. Southwestern Bell Telephone, L.P.,* 512 F.Supp. 2d 626 (N.D. Texas 2007) |
| Sprint | means defendant-appellee Sprint Communications Company, L.P., Sprint Spectrum L.P., And Virgin Mobile USA, L.P. |

# 2007138   v. 1

## STATEMENT OF RELATED CASES

Appellant John R. Gammino ("Gammino" or "Mr. Gammino") states that there are no cases related to this matter or to the patent-in-suit, being U.S. Patent No. 5,809,125 (the "'125 patent").

# 2007138   v. 1

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1332(a) and 1338(a). The district court entered final judgment dismissing the case on August 23, 2013 (Dkt. 161).   Plaintiff-Appellant Gammino timely filed his appeal on September 6, 2013 (Dkt. 162).   This Court deactivated the appeal in view of a pending motion (Dkt. 165) of the Sprint defendants seeking a finding of an exceptional case under 15 U.S.C. § 285.   On October 17, 2013, the district court dismissed without prejudice the motion of the Sprint defendants (Dkt. 178).   On October 31, 2013, this Court reactivated this appeal and ordered that appellant's brief is due on January 2, 2014.

# 2007138   v. 1

# STATEMENT OF THE ISSUES

1.    Whether the District Court erred in finding as part of its claim construction of the terms "selectively enabling;" "transmitting said dialing sequence," "transmits said dialing sequence," "means for preventing," "at least partially preventing operation of," and "predetermined signals which are used to accomplish international dialing," that the '125 patent requires blocking of all international access calls.

2.    Whether the District Court erred in finding as part of its claim construction of the terms "telecommunications device;" "telecommunications apparatus;" "means for receiving;' "means for evaluating;" "means for transmitting," that the processor or interface unit must be located within the telephone and the telephone must be located outside of the external telephone network.

3.    Whether the District Court Erred in Not Considering the Claims, Specifications and Other Evidence that Conclusively Proves that "Signal Value" includes Analog, Electrical and Digital Signals.

## STATEMENT OF THE CASE

Appellant Gammino's invention virtually eliminated fraudulent international access calls placed by criminals at the Port Authority of New York and New Jersey and elsewhere.   At that time telephone toll fraud countrywide was estimated at more than $4 billion annually. Dec. 13, 2011 N.T., at 12 (Gammino).   Prior to the invention, ATT and others had tried to solve the problem but had failed. The invention was patented (U.S. Patent No. 5,809,125) and is being used by Sprint and others throughout the United States.

Gammino has appealed a judgment of non-infringement by stipulation which was entered after claim construction findings that the patent requires, among other things, the blocking of "all international access calls." To the contrary, the claim language provides for blocking of only selective international access calls – i.e., those which contain a "third plurality" of dialed digits that are predetermined digits used for international calling. As an example, independent claim 8 and dependent claim 9 provide for prevention of only 6 out of 636 different types of international access calls.

The District Court also erred in finding that processor or interface unit must be located within the telephone and the telephone must be located outside of the

8

external telephone network. The District Court also erred in not considering the claims, the specification and other evidence that conclusively proves that "signal value" includes analog, electrical and digital signals.

In prior litigation, *Gammino v. Southwestern Bell Telephone, L.P.*, 512 F.Supp.2d 626 (N.D. Texas 2007), Southwestern Bell was awarded summary judgment against Gammino on invalidity of certain patent claims.    The claims at issue before the District Court in this matter, do not include the claims that were ruled to be invalid in the Southwestern Bell case.    This Court affirmed the Northern District of Texas Court summary judgment finding on invalidity and did not address an "alternate" non-infringement decision of SWB court that the patent requires the "blocking of all international calls." *Gammino v. Southwestern Bell*, 267 Fed. Appx. 949 (Fed. Cir. 2008).    The SWB court issued no opinion on the prevention of international *access* calls.

# 2007138   v. 1

## STATEMENT OF THE FACTS

1.    The patented invention selectively prevents international access calls which contain a "first plurality" of dialed digits that indicate an access code call and a "third plurality" of dialed digits containing an international access code (01 or 011) or area code (e.g., 809) that are selected by the user as predetermined digits. Col. 2, ln. 48-50.    An example of an international access call is 800-XXXXXXX-01 (see, e.g., col. 5, ln. 13-14) with "800" in the first plurality and "01" in the third plurality. The digits dialed in "XXXXXXX" will send the call through the carrier selected by the caller.

The patented invention only applies to the international access calls and not other "international calls," such as calls that start with international dialing codes "01" or "011" and then country code, city code and number of person being called (col. 1, lines 40-45).    Those international calls are not covered by the patent because they are not "international access calls" and they do not have a third plurality which indicates an international call (e.g., "01" or "011") or area code (e.g., 809).    Moreover, in recognition that the patent applies to "international access calls" and not all "international calls," Sprint abandoned a request for claim construction on that the '125 patent required the blocking of all "international calls" (Dkt. 82, p. 5; App-130) and replaced it with a request for claim construction

10

that the patent required the blocking of all "international access calls." (Dkt. 105, p. 3, 6; App-103).

Claim 8 provides an "apparatus for selectively enabling establishment of a telephone call" with the apparatus comprising "means for transmitting said dialing sequence to said communications pathway if said evaluated third plurality of dialing signals are determined to not be predetermined signals which are used to accomplish international dialing irrespective of said second plurality of dialing signals." '125 patent, claim 8.

Claim 9 provides a "telecommunications apparatus according to claim 8," but with the specific limitation and narrowing of claim 8 such that "said predetermined signals correspond to a "01" dialing sequence. '125 patent, claim 9. The dialing sequence of "01" in the third plurality relates to preventing only 6 types of international access calls, 101-XXXX-01+, 800-XXXXXXX-01+, 866-XXXXXXX-01+, 877-XXXXXXX-01+, 888-XXXXXXX-01+, and 950-XXXX-01+.   There are 636 different types of international access calls.

Claim 13 provides, as a narrower embodiment of claim 8, that the "predetermined signals which are used for international dialing are one of a) an international access code and b) an international area code." '125 patent, claim 1. There are 52 international area codes.   Where one of those 52 area codes

11

represents the predetermined signals, telephone calls dialed using the other 51 possible area codes are "selectively enabled."

During the patent prosecution, Gammino presented amendments which add claims that block certain types of international access calls.    He also presented the license of his invention to Technology Service Group, Inc., where the invention was used to block just 7 out of the 636 potential international access calls. Gammino further disclosed that New York Telephone was convinced to implement Gammino's invention (Dec. 13, 2011 N.T., at 27 (Gammino)), and that New York Telephone thereafter sent a letter stating that it would "block specific international calls," and listed the specific 7 types of calls to be blocked using the Gammino invention. File History, at 97; App-288.

Also as part of the patent prosecution, Mr. Gammino many times stated claim language that provides that calls would be prevented IF the dialed signals match Predetermined Signals.    Gammino did not represent that the patent *requires* that all international access calls must be blocked.    The patent examiner, whose rejections were all overturned by the Board of Patent Appeals, initiated the discussion of Gammino blocking all international calls.    The Examiner was concerned that Gammino's invention might not only result in blocking fraudulent international calls but also legitimate international calls. File History, at 691; App-872.    The Examiner used the term "all international calls" as referring to "good

12

calls" and "bad calls" ("this is blocking all international calls ("good" and "bad")").
*See* File History, at 359-360 (App-540-541); at 366 (App-547); at 487 (App-668)
("legitimate" and "illegitimate"); at 691 (App-872).    The context of the word "all"
as used by Gammino in the extended dialog between the inventor and the PTO
references all "good and bad" international calls, and not the entire universe of all
international calls.

2.    The '125 patent provides that an interface unit, which undertakes
some of the inventive processing, may be located separately from the telephone
(telecommunications device 210) and may be located anywhere that is connected
to one or more telecommunications lines.    The specification describes application
of the inventive method to commercial, government and specialized networks,
PBXs as well as to mobile and cellular communications.    The specification
further describes the use of electronic and mechanical switches, and references
central office switches which are located in the network, as well as PBX systems
which are located outside of the network in much the same way as a Mobile
Telephone Switching Office ("MTSO").

3.    "Signal value" refers to analog, electrical and digital signals. The
specification discloses the transmission of electrical signals to the microcontroller.
Figure 2C provides that signals sent to the microcontroller are "BINARY" signals.

Webster's Dictionary and treatise "DATA COMMUNICATIONS" provide that

"binary" is another label used to describe digital type of signal transmission.

# 2007138   v. 1

## SUMMARY OF THE ARGUMENT

1.    The '125 patent does not require the blocking of all international calls or the blocking of all international access calls.    A reading of the specification demonstrates that the patent does not cover international calls placed by first dialing 01 or 011 followed by the country code, the city code and the line number. Therefore, it does not require the blocking of all international calls.    Nor does the patent require the blocking of all international access calls.    As an example, independent claim 8 and dependent claim 9 when viewed together, teach that when the dialing sequence of "01" is found in the third plurality, a call will be blocked. The result is that *only* 6 out of 636 different types of international access calls will be blocked; leaving 630 types unblocked. *See* Gam Power Point 0000045 (also marked as GAM 052 001); App-1069.    The '125 patent specification provides for prevention only if "the received sequence of digits" matches predetermined signals; if there is *not* a "match" the call is "selectively enabled."

The District Court cited to certain statements made by the Examiner and by Mr. Gammino during the prosecution of the '125 patent, for the proposition that the '125 patent method blocks all international calls.    Not only did Mr. Gammino not agree or acquiesce to such a conclusion, but the Board of Patent Appeals, upon review of the Examiner's findings, reversed all of the Examiner's findings and objections, and determined that the invention prevents calls based upon *a*

15

*determination of specific digits in a dialing sequence.* The Board did not find that the '125 patent requires the blocking all international access calls. The extensive prosecution discussion between the Examiner and Gammino had been taken out of context by the SWB Court. That erroneous context was then relied upon by the District Court.

The District Court did not consider critical facts in the prosecution history. Amendments were made by Gammino to the application adding claims that block 6 out of 636 types of international calls and representations of actual use that block just 7 out of 636.

The District Court's finding that the '125 patent requires the blocking of "all international access calls" relied on the alternate decision in *Gammino v. SWB*, 512 F.Supp. 2d 626 (N.D. Tex. 2007). However, the SWB court's alternative finding was not that Gammino blocks "all international *access* calls," but rather that Gammino blocks "all international calls." The reliance by the District Court on this alternative finding by the SWB court is flawed and erroneous.

2. The '125 Patent does not provide that the microprocessor must be located within the telephone, and that the interface units and processing must be located outside of the external telephone network. The '125 patent specifically provides that an interface unit, which undertakes some of the inventive processing,

16

may be located separately from the telephone (telecommunications device 210) and may be located anywhere that is connected to one or more telecommunications lines. Thus, according to the '125 patent specification, the processing could be accomplished outside or within a network. Further, the specification describes application of the inventive method to commercial, government and specialized networks, PBXs as well as to mobile and cellular communications.    It also describes the use of electronic and mechanical switches, each of which are found in the network.

3.    "Signal value" refers to analog, electrical and digital signals. The District Court found that "signal value" only refers to analog signals but its analysis *solely* consists of comparing two proposed meanings.    The specification, however, reveals that the microcontroller can cause a termination of call and discloses the transmission of *electrical signals* to the microcontroller.    Figure 2C provides that signals sent to the microcontroller are *"BINARY"* signals. Webster's Dictionary and treatise "DATA COMMUNICATIONS" provide that "binary" is another label used to describe digital signal transmission.

17

# STANDARD OF REVIEW

The standard of review for the pending claim construction issues is a *de novo* review. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Cooper Notification, Inc. v. Twitter, Inc.*, 2013 WL 4611752, *4 (Fed. Cir. 2013).

The law of the Third Circuit controls in this matter, except for issues specific to patent law. *Chimie v. PPG Indus.*, 402 F.3d 1371, 1376 (Fed.Cir. 2005). The standard of review relating to the issue of excluding evidence, for the construction of the "signal value" term, is an abuse of discretion standard. *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994).

## ARGUMENT

I.  **The District Court Erred in Finding that the '125 Patent Requires the Blocking of All International Access Calls**

    A.  **The Plain Language of the '125 Patent Claims Shows that the '125 Patent Invention Does Not Teach the Blocking of All International Access Calls**

As acknowledged by the District Court, its claim construction relating to the disputed terms "selectively enabling," "transmitting said dialing sequence," "transmits said dialing sequence," "means for preventing," and "at least partially preventing operation of," each *requires* that the [District] Court determine whether the invention blocks all international access calls or whether it only blocks international access calls when the numbers in the third plurality of the dialing sequences are predetermined numbers." Opinion, at 15 (emphasis added).    Using this analysis, and based upon an adoption of the determinations made by the district court in *Gammino v. Southwestern Bell Telephone, L.P.*, 512 F. Supp. 2d 626 (N.D. Tex. 2007) ("SWB" or "Southwest Bell"), the District Court (for the Eastern District of Pennsylvania) held that the '125 patent claims "block all international access calls." Opinion, at 15.

However, the findings and analysis of the SWB court are not supported by the record evidence, and as such the decision of the District Court is similarly without support.    More particularly, the SWB court and the District Court

# 2007138   v. 1

misunderstood, or took out of context, certain statements made by Gammino during the prosecution of the '125 patent.

Upon a critical review of the claims at issue (including independent claims 8, 22, and 35), viewed in context with the related dependent claims, and viewed in context with the file history, it is clear that the '125 patent does not require the blocking of all international calls or all international *access* calls.    More particularly, the District Court erred by not considering as part of its claim construction analyses that certain claims in the '125 patent, including claims 9, 16, 23, and 30, provide for blocking of only 6 types of international access calls while permitting more than 630 types of other international access calls.

As this Court has repeatedly advised, claim construction analysis must begin with the language of the claim itself, as such language would have been understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (noting that "we look to the words of the claims themselves . . . to define the scope of the patented invention").

Moreover, the construction of claim terms must be undertaken in context of the entire patent, including usage of the claim terms within the full set of patent

20

claims and specification. *Phillips*, 415 F.3d at 1313.    That is, for example, claim terms within an independent claim should not be construed such that a related dependent claim has no relevance or is superfluous. *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369-70 (Fed. Cir. 2007).    As explained by this Court, the "presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315.    As provided by the doctrine of claim differentiation, construction of an dependent claim should provide that the dependent claim is a narrower version (having specific limitations) not included in the "parent" independent claim. *Andersen Corp.*, 474 F.3d at 1369-70.    To construe the independent claim as including the dependent claim limitation would render the dependent claim "superfluous." *Anderson Corp.*, 1369-70; *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007).

With respect to the pending claims, the language of the '125 patent claims, and a plain reading of those claims shows that Mr. Gammino's invention did not require or result in the blocking of all international access calls.    By way of one of several examples, independent claim 8 and the related dependent claim 9 must be construed in context with each other.

Claim 8 teaches an "apparatus for selectively enabling establishment of a telephone call" with the apparatus comprising:

21

"means for receiving said dialing sequence prior to receiving said central office exchange code;

means for evaluating said third plurality of dialing signals in a location in said dialing sequence use for international dialing by determining *if said third plurality of dialing signals are used to accomplish international dialing*; [evaluate ONLY if plurality used for int'l dialing; do NOT evaluate if not of int'l dialing]

"means for transmitting said dialing sequence to said communications pathway if said evaluated third plurality of dialing signals are determined to not be *predetermined signals* which are used to accomplish international dialing irrespective of said second plurality of dialing signals." '125 patent, claim 8 (emphasis added).

Claim 9 next teaches a "telecommunications apparatus *according to claim 8*," but with the specific limitation and narrowing of claim 8 such that "said predetermined signals correspond to a "01" dialing sequence. '125 patent, claim 9 (emphasis added).    Accordingly, claim 9 teaches the "selective enabling" of an international telephone call if the third plurality of dialing signals are determined to not be "an 01 dialing sequence."    There is no question but that an 01 dialing sequence in the third plurality is but one of two (01 and 011) international dialing sequences within the third plurality.    More particularly, the dialing sequence of "01" in the third plurality relates to *only* 6 types of international access calls, being

101-XXXX-01+
800-XXXXXXX-01+
866-XXXXXXX-01+

22

877-XXXXXXX-01+
888-XXXXXXX-01+, and
950-XXXX-01+.[1]

Accordingly, by its plain language, claim 9 <u>enables</u> international access calls

having an 011 within third plurality, and as such <u>*does not*</u> block all international

access calls.

The only proper construction of claim 8, in context with claim 9, is that an

international access call is *allowed* (or selectively enabled) where the third

plurality of dialing signals are used to accomplish international dialing, *and* said

third plurality of international dialing signals are determined to not be within a

subset of predetermined international dialing signals.    A construction that the

'125 patent (and as such both claims 8 and 9) requires the blocking of all

international calls is without support, and would make claim 9 superfluous, and is

contrary to the law. *Andersen Corp.*, 474 F.3d at 1369-70.

This same broader independent claim / narrower dependent claim structure

relating to blocking international access calls having an 01 in the third plurality is

also used in the '125 patent for claims 15 (independent claim) and 16 (related

dependent claim); claims 22 (independent claim) and 23 (related dependent claim);

---

[1] The '125 patent specification refers to 10-XXX-01 calls.    However, since the issuance of the '125 patent, this format for that type of call has been expanded to101-XXXX-01, with 101 indicating the equal access code, XXXX indicating the carrier identification code, and 01 indicating an operator assisted international call.

and claims 29 (independent claim) and 30 (related dependent claim). *See* '125 patent, cols. 11 – 13.

A second example of how the '125 patent claims establish that not all international calls or international access calls are blocked is shown with a review of independent claim 8 in context with dependent claim 13.    More particularly, claim 13 provides, as a narrower embodiment of claim 8, that the "predetermined signals which are used for international dialing are one of a) *an* international access code and b) *an* international area code." '125 patent, claim 13 (emphasis added).

Accordingly, claim 13 teaches the "selective enabling" of an international telephone call if the third plurality of dialing signals are determined to not be either "*an* international access code" or "*an* international area code."    The important word used in claim 13 is "an."    As used in claim 13, the word "an" means *a particular* international access code or *a particular* international area code is the predetermined signal compared to the third plurality of dialing sequences.    The word "an" does not and cannot mean "all" international access codes or "all" international area codes.

While "a" or "an" can mean "one or more," *Baldwin Graphic Sys., Inc. v. Siebert*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008), where the use of the term in the claims, as supported by the specification and prosecution history, indicates a

24

singular meaning, then such a construction should control. *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1359 (Fed. Cir. 2005) (noting that "the claim language 'consisting of . . . a sodium phosphate,' on its own, suggests the use of a single sodium phosphate").

Accordingly, upon review of claim 13 (and related independent claim 8), because there are two international access codes available (being 01 and 011), having *one* of these two access codes as a "predetermined signal," means, by definition that those calls will be blocked, and the other access code calls would be "selectively enabled."    More particularly, if 01 was selected as the "predetermined signal" then 01 access code calls would be blocked, and 011 calls would necessarily be enabled because 011 was not the "predetermined signal" in the third plurality.

This same independent/dependent claim structure relating to "an international access code" and "an international area code" is also used in the '125 patent with respect to claims 22 (independent claim) and 26 (related dependent claim).

Claim 13 also provides for the selectively enabling of calls where the predetermined signal in the third plurality is not one of the available 52 international area codes.    As such, where *one* ("an international area code") of the

25

possible 52 area codes is the predetermined signal, then that specific area code is blocked according to claim 13, and the other 51 possible area codes are "selectively enabled."    As shown with the above examples, the '125 patent claims, by their plain language, do not require the blocking of "all" international calls or international access calls. *Phillips v. AWH Corp.*, 415 F.3d at 1312–1313 (noting that the claims are of "primary importance in the effort to ascertain precisely what is patented").

The above claim construction is also fully consistent with the '125 patent specification.    For example, as part of the description of the background of the invention, Gammino explained that one prior art "solution with minimizes fraudulent calls from public telephones is to block number sequences which access international telecommunications services.    Such services are often accessed from public telephone by initially entering the digit sequence 01." '125 patent, col. 2, lines 17 – 22.    Gammino would not have sought an invention for a method (blocking all international calls), where he acknowledged in the specification, such a method was part of the prior art.    Indeed, he would not have been granted a patent on such a prior art method. *See also,* File History, at 338; App-519 (showing Gammino's description of a prior art AT&T method that blocked all international calls using 01 or 011 as the first digits of the dialing sequence).

26

Similarly, in describing "the operation of the present invention" and the inventive method shown in Figs. 4A and 4B, Gammino noted in the '125 patent specification, at col. 9, lines 12 through 40, that "at step 414, the received sequence of digits is compared with table entries as any of several particular places in the dialing sequence such as those illustrated in Tables 1 and 2 above." '125 patent, col. 9, lines 30 – 34.    The comparison of "the received sequence of digits" with the table entries is precisely the determination of whether the third plurality are determined to not be within a subset of predetermined international dialing signals. As shown in Fig. 4A, at step 414, the comparison of received sequence with the predetermined table entries is made, and if there is *not* a "match" (step 416 in Fig. 4B) then the call is "selectively enabled." '125 patent, claim 8.    This "not matching," could, by way of one example, be any third plurality of international dialing signals other than an 01. *See* '125 patent, claim 9.    If on the other hand, there is a "match" (step 416 in Fig. 4B) then the call is blocked. '125 patent, Figs. 4A and 4B.

As shown above, upon a detailed review of the '125 patent claims, considered in context with the full set of claims, establishes that the '125 patent claims *do not require* the blocking of all international calls.    Accordingly, the District Court erred in relying on the Southwest Bell court decision, and finding that in construing the disputed terms "selectively enabling," "transmitting said

27

dialing sequence," "transmits said dialing sequence," "means for preventing," and "at least partially preventing operation of," each "requires that the [District] Court determine whether the invention blocks all international access calls or whether it only blocks international access calls when the numbers in the third plurality of the dialing sequences are predetermined numbers." Opinion, at 15.    This Court should correctly construe the noted claim terms as *not* requiring the blocking of all international calls or all international access calls.

**B.    Gammino did not unequivocally disavow a claim construction that a user may elect to prevent some and not all international access calls**

The District Court determined that Gammino represented that the '125 patent "blocks all international access calls" and that he disavowed a claim construction that a user may elect to prevent some and not all international access calls.    The District Court erred because it did not properly consider Gammino's disclosures made to the PTO during the prosecution, including amendments to the application adding claims that block a few types of international calls; (b) licensing of his invention to Technology Service Group, Inc. to block just 7 out of the 636 potential international access calls; and (c) the disclosure that the use of Gammino's invention by New York Telephone at the Port Authority, only blocked 7 types of international calls.    These disclosures were made by Gammino as part of the prosecution history, and are accordingly part of the patent intrinsic evidence.

28

Such evidence should have been considered by the District Court as part of the claim construction analyses.

Moreover, for a patentee to have disavowed a particular claim construction, that patentee must have unequivocally disavowed such a claim meaning, *Chimie v. PPG Indus.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005), and must "clearly and unambiguously disclaimed or disavowed any interpretation during prosecution in order to obtain claim allowance." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed. Cir. 2005).   As shown below, Gammino did not "unequivocally disavow" a claim construction that his inventive methods do not require the blocking of all international calls or all international access calls.

### 1.    Gammino disclosed to the PTO actual use of the invention by TSG and New York Telephone of blocking just seven of the 636 types of international access calls.

An access call can be initiated by first dialing 101, 950, 800, 866, 877, and 888. (December 13, 2011 N.T. at 27 (Gammino).   For each one of those 6 initial access signals there are 106 types of international access calls.   As an example, for "101" calls:

101-XXXX-01+
101 XXXX- 011+
101-XXXX-   **52** International area codes +1 for dial direct
101-XXXX-   **52** International area codes +0 for collect or credit card

*See* Gam Power Point 0000045, at App-1069.

29

Since each of the 6 initial access signals (101, 950, 800, 866, 877, 888) have 106 types of international access calls, in total there are 636 types of international access calls. Gam Power Point 0000045; App-1069.    Mr. Gammino disclosed to the PTO that he had entered into a licensing agreement with Technology Service Group, Inc. ("TSG"), dated October 29, 1992, where he licensed use of his invention to prevent 7 particular types of international access calls. The parties to the TSG license agreed that:

> The Software is an algorithm to be implemented in pay telephones which will block calls which are dialed in the following sequences:
>
> 10xxx-01
> 950-10xx-01
> 1800-xxx-xxxx-01
> 800-xxx-xxxx-01
> 950 -10xx-809
> 1800-xxx-xxxx-809
> 10xxx-809

TSG Agreement, File History, at 308, 318; App-489, 499.

Gammino and TSG entered into a contract negotiated at arm's length that TSG would use Gammino's invention to block 7 types of international access calls out of the 636 different types of international access calls.

Gammino also disclosed to the PTO that New York Telephone blocked 7 types of international access calls out of 636 at the Port Authority of New York and New Jersey, where the Gammino invention was implemented.    In 1992, New York Telephone was convinced by the Port Authority (with Gammino's assistance)

30

to implement the invention. Dec. 13, 2011 N.T., at 27 (Gammino).   On April 16, 1992, New York Telephone sent a letter to the Port Authority, in response to the Port Authority's written request, advising that it would "block specific international calls," listing the following 7 types of calls:

10xxx-01
950-10xx-01
1800-xxx-xxxx-01
800-xxx-xxxx-01
950-10xx-809
1800-xxx-xxxx-809
10xxx-809

File History, at 97; App-278.

The above 7 types of calls listed by New York Telephone do *not* represent the universe of international access calls that could be made. Dec. 13, 2012 N.T. 69-70, 75-76 (Gammino).   That evidence is uncontradicted.   New York Telephone blocked 7 types of international access calls out of 636. To say the least, Gammino disclosed to the PTO that his invention could block some and not all international access calls.

**2.    During Patent Prosecution, Gammino filed with the PTO three sets of amendments to his application that provide for claims which prevent just a few of the 636 types of international access calls**

On November 10, 1993, Mr. Gammino filed an amendment to his patent application that added 4 claims that ONLY block calls if the Predetermined Signals are "01." As an example one of the 4 amendments is:

31

> 24.    (Newly added) Telecommunications apparatus according to claim 1, wherein said signals which are used for international **dialing correspond to a "01" dialing sequence.**

File History, at 202-203; App-383-384 (emphasis added).

On June 18, 1995, Mr. Gammino filed an amendment to his patent application by adding two claims that ONLY block calls if the "predetermined signals" are "01." File History, at 382; App-563.

As described earlier, there are only 6 types of "01" calls. (GAM Power Point 0000045; App-1069). Accordingly, the two noted amendments submitted to the PTO more than a year and a half apart disclose that the '125 patent allows the user to block only 6 out of 636 types of international access calls.

On October 2, 1995, Mr. Gammino filed an amendment to his patent application that added six claims that provide for blocking just one type of international access call.    An example is:

> 45.    (Newly Added) Telecommunications apparatus according to claim 3, wherein said plurality of second signal values are determined to be used to accomplish international dialing if said plurality of second signal values are **one of a) an international access code and b) an international area code.**

File History, at 400-404, claims 41, 45, 49, 52, 55, and 58 (emphasis added).

There are two international access codes (01 and 011) and 52 international area codes resulting in a total of 54 international access and area codes. Gam Power Point 0000045; App-1069.    Those amendments disclosed that those six

32

claims provide for the blocking of certain international calls with 1 one particular international access code or international area code while allowing calls using the other 53 international access codes or area codes, For example, if the one access code selected to be blocked is "01," the following six (6) types of calls are blocked: 101 XXXX 01+, 950 XXXX 01+, 800 XXXXXXX 01+, 866 XXXXXXX 01+, 877 XXXXXXX 01+, 888 XXXXXXX 01+, leaving *unblocked* the other 630 types of international access calls, which is a far cry from the alleged mandatory requirement that **all** international access calls must be blocked.

Clearly the statements that Gammino's invention will block all international calls in the prosecution history did not relate to the universe of international calls or even to the universe of international *access* calls.   The discussions with the PTO were taken out of context by the SWB court and the District Court. Gammino's responsive statements to the Examiner must be interpreted in the context of the prosecution of the patent at the time and not in hindsight without such context.

### 3.    The District Court's holding that the patent requires the blocking of all "international access calls" is incorrectly based on information regarding "international calls" and not "international *access* call" evidence

When finding that the '125 patent requires the blocking of all international *access* calls, the District Court misunderstood the context of the statements made by Gammino and the Examiner.   The District Court also relied on a prior

33

alternative holding of the SWB court that the '125 patent requires the blocking of "all international calls." Opinion, at 16.    Moreover, the District Court's finding that Gammino blocks "international access calls" is not supported by the evidence.

The District Court offered no explanation as to why it relied on an alternative finding of the SWB court regarding "all international calls" when construing the meaning of "international *access* calls."    The District Court's erroneous reliance on inapplicable findings occurred despite the parties' agreement that the patent has no application to "all international calls."    Indeed, Sprint has acknowledged that it was incorrect in previously arguing that the '125 patent requires blocking of "all international calls."    Sprint jettisoned its prior argument that the '125 patent blocks "all international calls" (*see* Sprint Claim Construction Brief, Dkt. 74 (App-25), at 3, 18), and later, on the eve of the *Markman* hearing argued that the '125 patent blocks "all international **access** calls" (*see* Supplemental Sprint Claim Construction Brief, Dkt. 111 (App-25), at 3).

The District Court erred in relying on the decision in *Gammino v. Southwestern Bell Telephone, L.P.*, 512 F.Supp.2d 626 (N.D. Texas 2007), because the finding is not relevant here as that court did not address international *access* calls but instead provided an "alternate" decision regarding "all international calls."    "Where a district court judgment is based on alternative grounds and only one of those grounds is affirmed on appeal, only the findings essential to the

34

ground which was affirmed can be subject to issue preclusion in the later case."
*Chemi Spa v. Glasxosmithkline*, 385 F.Supp.2d 514, 517-18 (E.D. Pa 2005).

Further, the issues before this Court and the SWB court are different.[2]    The
SWB court did not have before it any ***enablement*** claims (claims 8 through 14)
that are currently before this Court.    Also, the analysis by the SWB Court
erroneously involved blocking based only on signals in the third plurality (see
*Southwestern Bell*, 512 F. Supp. 2d at 639) and did not analyze claims that
addressed the prevention of international calls based on predetermined signals in
the first plurality (or signal value) and third plurality (or signal value). *See* '125
patent claims 10, 25, and 38.

**4.     Mr. Gammino's explanations made during the prosecution of the
'125 patent, about how his inventive method could operate were taken out of
context by the District Court, and such explanations are not an unequivocal
disavowance by the patentee**

During the prosecution of the '125 patent, Gammino made certain
statements regarding the scope of his inventive method.    As described above, the
District Court's reliance on statements that his invention "will block all
international calls" was taken out of context.    The Court failed to apply well
established law and to analyze whether Gammino's prosecution history statements

---

[2] The claims at issue before the District Court (claims 8-14, 22-28 and 35-41) are
not the claims that were asserted claims and at issue before the SWB court when it
entered summary judgment.

35

unequivocally disavowed a patent scope that the '125 patent does not require

blocking of all international calls. *Chimie v. PPG Indus.*, 402 F.3d 1371, 1385

(Fed. Cir. 2005).

A review of the many statements regarding this issue shows that the legal

standard has not been met.   As discussed above, Gammino did not say that the

patent *requires* the blocking of all international *access* calls; he disclosed to the

PTO amendments to his application that provided for the blocking of just 6 out of

636 types of international *access* calls, and that the users of the invention that had

tailored the invention to block just 7 types of international *access* calls.

In another amendment to the application and in the Appeal Brief before the

PTO, Gammino stated that "Applicant is claiming an invention which includes

restriction in the establishment of international telephone calls *which are dialed*

*using certain sequences.*" File History 294, 514; App-475, App-695 (emphasis

added).   If Gammino meant to block ALL international access calls he would

have said: "Appellant is claiming an invention which includes restriction in the

establishment of international telephone calls." He could have ended there, instead

he included the clause with, "which are dialed using certain sequences," meaning

that prevented calls have to be international PLUS have been "dialed using certain

sequences."

36

In patent prosecution, Mr. Gammino *many times* stated claim language that provides that calls would be prevented or enabled IF the dialed signals match predetermined signals. As examples see, File History (beginning at App-182), at 30, 35, 41, 48, 54, 62, 63, 106, 107, 231, 271, 278, 294, 301, 304, 328, 331, 333, 376, 377, 378, 379, 383, 514, 730, and 734.

Perhaps most telling is the fact that the Board of Patent Appeals reviewed the full record of discussions between the Examiner and Gammino, and did **not** find that the patent requires the blocking of all international calls. In its written decision, the Board stated:   "[w]e have carefully considered the entire record before us, and we will reverse all of the rejections." File History, at 787; App-968. The Board held that the blocking is based upon a determination of specific digits in a dialing sequence:

> We agree with appellant that Bimonte and the FCC Regulations neither teach nor would they have suggested the prevention of international calls based upon a determination of specific digits in a dialing sequence. Accordingly, the obviousness rejection of claims . . . based upon the combined teachings of Bimonte and the FCC Regulations is reversed.

File History, at 791, App-972.

The District Court said that during the patent prosecution, Gammino distinguished his invention from the Bimonte patent (U.S. Patent No. 4,577,066) by stating that Gammino's invention blocked all international calls.   As explained

above, to the contrary, the Board understood the context of the discussions between the Examiner and Gammino, and cited Gammino's arguments that his invention prevents international calls based on a determination of specific digits in a dialing sequence. File History, at 791, App-972.

The term "all international calls" was discussed by the Examiner and Gammino in the context noted above without any specific discussion of international "access" calls.   Once again the term "all international calls" was intended by the Examiner to mean that the invention "is blocking all international calls ("good" and "bad")." File History, at 791, App-972.

The statements relied upon by the District Court have no reference to particular claim language or section of the specification. They surely do not rise to the level of an unequivocal disclaimer that the patent requires the blocking of the universe of international calls.

The inescapable conclusion is that unequivocal disavowance does not apply here because the District Court did *not* hold that Gammino's statements constitute an unequivocal disavowed meaning.   The District Court did not even mention or refer to the test of an unequivocal disavowance.   Under *Chimie, supra.*, the evidence and finding by the Court do not support a holding of unequivocal disavowance.

## II.    The District Court Erred in Finding that the '125 Patent Processor Or Interface Unit Must Be Located With the Telephone And Outside of the External Telephone Network

The District Court's construction of the disputed claim terms "telecommunications device," "telecommunications apparatus," and the three means-plus function terms, being "means for receiving," "means for evaluating," and "means for transmitting," in part, *focused* on the location of the "telecommunications device," the "telecommunications apparatus," and the location of the interface unit or processor. Opinion, at 21, 26 (noting that "[t]he primary dispute between the parties with respect to ["telecommunications apparatus"] is whether the telecommunications device and interface unit must be located on the same side of the network," and noting that the structure for "means for receiving" must "necessarily be located on the same side of the commercial telephone network").

Specifically, the District Court construed "telecommunications apparatus" as "a telephone or telecommunications device 100 or 210 and interface unit 160 or 200, located outside of an external network (or on the same side of a commercial telecommunications network)," and construed "means for receiving" as "decoder 120 in telephone 100, decoder/DTMF generator/tone converter 260 in interface unit 200, or DTMF detector 330 in personal computer 300."    For at least these two claim term constructions, the District Court erred in finding that the

39

telecommunications device and the interface unit (or processor) must be located on the same side of the network.

With respect to construing means-plus function terms, construction of such language, is to be made as provided pursuant to 35 U.S.C. § 112, sixth paragraph. As provided in Section 112, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, sixth paragraph.

The claim construction of means-plus-function terms requires two distinct steps. *First*, the function of the claim term must be determined. *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1330 (Fed.Cir. 2005). In this case, for the disputed terms, such functions are readily determined (being "transmitting," "evaluating," and "receiving"). The *second* step is to identify from the patent specification, the corresponding structure that performs that function. *Applied Medical Research Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006); *Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). The "corresponding structure" are those elements or devices that are associated with or linked to the function of the means-for claim term. *Medtronic*, 248 F.3d at 1311.

40

While the District Court correctly referenced parts of the '125 patent specification, and several of the '125 patent figures, as part of its analysis, the District Court did not properly consider all of the disclosed embodiments, or the fact that the disclosed embodiments and structures were exemplary embodiments.[3] More specifically, the District Court did not properly include, as part of its claim construction, each of the described examples, or each of the several cited "equivalents" of the described structure within the inventive method and apparatus.

With due consideration of the cited examples, embodiments, and equivalents, a proper construction of the "telecommunications device," "telecommunications apparatus," and "means-for" terms, establishes that the "telecommunications device" and the interface unit *need not* be located on the same side of the network.    More particularly, a proper claim construction of the disputed terms shows that the analysis of and processing of signals to determine whether to enable or block a call *does not* have to occur prior to transmission of the signals to the "telecommunications line" or at the "telecommunications device."

Upon a detailed review of the '125 patent specification, in particular in view of the several exemplary embodiments, Gammino teaches that the microprocessor

---

[3] Gammino acknowledges that the District Court stated that "the systems depicted and described in the figures and specification are examples only," Opinion, at 22, however, as shown in this Section, the District Court did not thereafter consider the described equivalents or other relevant embodiments.

# 2007138   v. 1

(a) may be located prior to the "telecommunications line," (*see* Figs. 1A and 1B, generally cols. 3-5), and alternatively (b) may be located anywhere along the "telecommunications line." (*See* Figs. 3A and 3B, generally cols. 8-9).

More particularly, in Figs. 1A and 1B, microprocessor 130 is shown *prior to* switch 150 and the *outgoing* telecommunication lines 170.    Alternatively, in Figs. 3A and 3B, PC system 360 (being a computer processor) is shown located *along incoming* telecommunications lines 350, and *prior to* incoming switch 370. See also, col. 8, lines 43 to 67, col. 9, lines 1 to 11.    As such, contrary to the District Court's claim construction, at least these two exemplary embodiments show the location of the processing / interface unit as (a) being located with the telecommunications device and before the outgoing telecommunications lines 170 or (b) being located along the incoming telecommunications lines 350.

In still further detail, in one exemplary embodiment, the '125 patent explains that "telecommunications lines 170 may be used for interfacing to a limited access type network, for example, a telecommunications line which has been specifically identified by a central office (or an analogous switch) for dedicated use (e.g. pay telephone signaling protocols)." '125 patent, col. 3, lines 28-33.    Similarly, in a *different* embodiment shown in Fig. 2A, "telecommunications device 210 is connected to telecommunications lines 250 via interface unit 200."    Further, in still another embodiment shown in Figs. 3A and 3B, the telecommunications

devices 320a (through 320n) are communicating with a PBX system which is connected to "telecommunications lines 350."    As noted above, it is important to see in this latter exemplary embodiment, that the interface unit, including the processing device (PC System 360) is located along the "telecommunications lines" which is outside of the PBX System 310 and the telecommunications devices 320a (through 320n). '125 patent, Figs. 3A and 3B, col. 8, lines 43 to 52. Moreover, as a further exemplary embodiment of the '125 patent inventive apparatus and method, Gammino taught that the "telecommunications line 170 may be [alternatively] coupled to a variety of telephone networks (e.g. *a cellular network*)." '125 patent, col. 3, lines 33 to 36.    Where used in connection with a cellular network, the interface unit or processing, occurring along the telecommunications lines could, contrary to the District Court's finding, be part of the commercial network.

It appears that the District Court erred by selecting only certain *exemplary* embodiments within the '125 patent specification in reaching its conclusion that the processing and telecommunications device must be co-located outside of the network, and in identify the corresponding structure for the "means for receiving" claim term, and did not consider other relevant, cited and described embodiments or "equivalents thereof." 35 U.S.C. § 112.

43

By way of example, the District Court's claim construction for "telecommunications device," "telecommunications apparatus," "means for evaluating," and "means for transmitting," does not even reference or cite to the disclosed embodiments or structures in Figs. 3A and 3B (or the related specification descriptions).    It is only in the construction of "means for receiving," that the District Court references Figs. 3A or 3B or any structure or elements shown in those figures.    Moreover, with respect to that reference to Figs. 3A and 3B, as shown above, the District Court erred in concluding the DTMF detector 330 in personal computer 300 must be outside of the network.

Such a narrow construction of the noted disputed claim terms and means-plus-function claim terms was incorrect.    Gammino respectfully contends that certain embodiments or examples of the claimed invention, including Figs. 1A, 1B, 2A and 2B, without consideration of other disclosed embodiments, including Figs. 3A and 3B, cannot be used to limit the scope of the '125 patent claims. *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

Accordingly, the '125 patent specifically provides that an interface unit, which undertakes some of the inventive processing, may be located separately from the telephone (telecommunications device 100, 210, 320A to 320N) and may be located anywhere that is connected to one or more telecommunications lines, or along one or more telecommunications lines.    As such, according to the '125

44

patent specification, the processing could be accomplished outside of or within a network. *See also*, '125 patent, col. 6, lines 39 to 46 (explaining that "[i]n Figs. 1A and 1B, switches 150 and 150A are each shown as a physical switch. However, it is understood that switches 150 and 150A may be implemented as mechanical switches, electronic switches, etc.").

In view of the above arguments, the District Court erred in construing the disputed claim terms "telecommunications device," "telecommunications apparatus," and the three means-plus function terms, being "means for receiving," "means for evaluating," and "means for transmitting" as meaning that the inventive processing (undertaken by the interface unit or processor) is co-located with the "telecommunications device" outside of the "network." Opinion, at 20-21. As shown above, the '125 patent plainly discloses exemplary embodiments where the microprocessor and interface unit is not co-located with the "telecommunications device" and may very well being included within the "telecommunications line" within the "network." (See Figs. 3A and 3B, generally cols. 8-9). Accordingly, this Court should correctly construe the noted disputed claim terms as *not* requiring that the "telecommunications device" and "interface units" be located outside of the "network."

III.    **The District Court Erred in Not Considering the Claims, Specification and Other Evidence that Conclusively Proves that "Signal Value" Includes Analog, Electrical and Digital Signals.**

The District Court construed the meaning of "signal value" by merely comparing the two definitions proposed by the parties with no discussion at all of the claim language, the specification, or any of the evidence presented and offered for submission at the Markman hearing.   Opinion, at 20.

This Court has repeatedly advised that a trial court must determine the ordinary and customary meaning of undefined claim terms as understood by a person of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13.   The "sources [for a proper claim construction] include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (internal quotation marks and citations omitted).

It is clear that the claims, specification, and dictionary and treatise evidence establish that the proper construction of "signal value" includes analog, electrical and digital signals.   By contrast, the District Court's definition of "signal value" includes only analog signals.

With respect to the highly relevant descriptions provided in the '125 patent, the specification provides that when the microcontroller detects specific,

predetermined digits at particular locations, the microcontroller may signal the
switch to open, causing a termination of the call. *See* '125 patent, col. 6, lines 53-
65; Fig. 2C; and claim 22.   Further, at col. 6, lines 53-65, the detailed description
discloses the transmission of *electrical signals* to the microcontroller.

Still further, Fig. 2C provides that signals that are sent to the microcontroller
are "BINARY" signals.   A binary signal is another label for a digital signal that is
received or transmitted by a computer. GAM Power Point 000 063, 000 070;
Exhibits A and B attached to Motion to Reconsider Exclusion of Evidence.[4]  See
also, Nov. 10, 2011 Markman Hearing N.T., at 148 (Brown).   Sprint submitted no
contrary evidence.   The '125 patent specification also taught alternative means of
entering dialing signals, including through "a credit card magnetic stripe, a smart
card" or also through conversion of voice recognition into "appropriate electronic
signals." '125 patent, col. 4, lines 15 through 23.

### A.    The District Court erred in denying the motion to amend one (out of 10) proposed constructions

On October 14, 2011, Gammino served Sprint with notice that he would
amend his proposed construction of "signal value" to include, analog, electrical

---

[4]  The cited evidence was excluded after, as acknowledged by the District Court,
Gammino made an offer of proof on the meaning of digital. Dec. 13, 2011,
Markman Hearing N.T., at 17-18.   Gammino also filed a post hearing motion
requesting the District Court to reconsider the rejection of evidence on the meaning
of digital and submitted the meanings in Webster's dictionary and "DATA
COMMUNICATIONS." Dkt. 124.

and digital signals. App-1070. Such notice by Gammino was provided to Sprint 60 days before Sprint submitted its case at the Markman hearing.    The meaning of "signal value" had not been used in any court opinion, and thus was fully open for complete consideration and construction.

The motion by Gammino seeking to amend his proposed construction of "signal value" was denied by the District Court. Dkt. 122; App-130.    The denial by the District Court is contrary to the standards set forth in Federal Rule of Civil Procedure 15(a) (2) ("The court should freely give leave [to amend] when justice so requires").    Moreover, with respect to amending a pleading, appellate courts have said the principal test for prejudice is "whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory." See, e.g., *Evans Products Co. v. West American Ins. Co.*, 736 F. 2d 920, 924 (3rd Cir. 1984).    A review of the time line is instructive on whether Sprint had a fair opportunity to defend or offer additional evidence.

Prior to September 22, 2011, the parties had filed a total of four claim construction briefs but the meaning of "signal value" was not yet discussed in any claim construction briefs.    On September 22, 2011, the parties filed a Joint Statement on Disputed Claims (Dkt. 105), which did include proposed definitions of "signal value."    Twenty-two days later, on October 14, 2011, Gammino

48

advised Sprint of his intention to revise his proposed construction of the disputed

term "signal value." App-1070.    Thereafter, on October 25, 2011, Gammino filed

his motion seeking leave to amend his proposed meaning of "signal value." *See*

Dkt. 108; App-17.

On December 13, 2011, sixty days after receipt of the notice from Gammino

advising of the intention to revise his proposed definition of "signal value," Sprint

presented its Markman case.    Given the extended period of time between the

notice from Gammino of his intention to revise his proposed claim construction,

and the lack of any prejudice or harm to Sprint, the denial of the motion to amend

by the District Court was erroneous. Fed.R.Civ.P. 15(a)(2).

The District Court denied the motion to amend because it found that the

amendment "would result **in prejudice** to Sprint." Dkt. 122 (emphasis added).

The District Court stated the prejudice to Sprint was based upon an alleged role of

Gammino's initial definition of signal value used in response to Sprint's motion for

summary judgment decided many months previously on July 28, 2011. App-76-

102.

Such a conclusion is without support.    To the contrary, the District Court's

opinion on Sprint's summary judgment motion does not refer to the meaning of

"signal value."    Indeed, the term "signal value" does *not* even appear in the

49

District Court's opinion. *See* Dkt. 99; App-76.   More specifically, the basis of the Court's decision denying Sprint's collateral estoppel defense is that the *SWB* Court "did not actually litigate the issues central to the validity of the unasserted claims," and Gammino has not yet had his day in court on the validity of unasserted claims. Dkt. 99; App-76, at 21-23.   More to the point with respect to this Markman claim construction issue, "signal value" had absolutely nothing to do with the Court's prior opinion on the motion for summary judgment.   It is instructive to note that except for the District Court's reference to "signal value" as having some effect on the prior summary judgment decision (which did not cite or use "signal value" in any way), the District Court provided no basis or explanation for finding any "prejudice" to Sprint. Dkt. 122; App-130.   Gammino contends that the proposed amendment to the meaning of "signal value" would not result in any prejudice to Sprint and should have been allowed.

### B.   The District Court Did Not Follow the Law that the Actual Meaning of a Claim Term Supersedes the Parties' Proposed Definitions

It is clear the meaning of "signal value" as used in the '125 patent includes electronic and digital signals. It is also true that Sprint's proposed meaning and Gammino's proposed initial meaning (prior to the offered amendment) do not include electronic and digital signals.   However, the law provides that the District Court must accept the actual appropriate meaning of a disputed claim term, even though that meaning is not a proposed definition.

50

In *Blackboard, Inc. v. DESIRE2LEARN INC.*, 574 F. 3d 1371, 1378 (Fed Cir. 2009), this Court approved the fact that the district court "construed the claim language in a manner different from the construction proposed by either party." Gammino further notes that there is substantial precedent where district courts have adopted actual meanings of claim terms that were not included within the parties' proposed constructions. See, e.g., *CNET Networks Inc. v. Etilize, Inc.*, 547 F. Supp. 2d 1055, 1063 (N. D. Cal 2008); *Sprint Communications Company L.P. v. Big River Telephone Company, LLC,* 2009 U.S. Dist. Lexis 58161, p. 51 (D. Kan. 2009).[5]   Gammino respectfully contends that this Court should construe the meaning of "signal value" based on the evidence and find that the term includes analog, digital and electronic signals.

By way of further example, relating to the need to revisit and revise the meaning of disputed claim terms, this Court has acknowledged that "District courts may engage in a *rolling claim construction*, in which the [trial] court revisits and alters its interpretation of the claim terms as its understanding of the technology

---

[5] Other cases similar to *CNET Networks* and *Sprint Communications* include: *Illinois Tool Works Inc. vs. MOC Products Company, Inc.,* 2011 U.S. Dist. Lexis 50934, p. 9 (S. D. Cal 2011); *Cheetah Omni LLC vs. Samsung Electronics America, Inc.,*   2009 U.S. Dist. Lexis 119541, p. 21 (E.D. Tex. 2009); *Samsung SDI Co., Ltd. v. Matsushita Electric Industrial Co., Ltd.,* 2006 U.S. Dist. Lexis 98633, p. 83 (W.D. Pa. 2006); *Alcatel USA, Inc. v. Tekelec, Inc.,* 2002 U.S. Dist. Lexis 28607, p. 9 (E.D. Tex 2002).

# 2007138   v. 1

evolves." *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1364 (Fed. Cir. 2005), citing, *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (emphasis added).

# 2007138   v. 1

## Conclusion

For the foregoing reasons, this Court should reverse the claim construction findings of the District Court with respect to claim term meanings for "selectively enabling," "transmitting said dialing sequence," "transmits said dialing sequence," "means for preventing," "at least partially preventing operation of," "telecommunications device," "telecommunications apparatus," "means for receiving," "means for evaluating," "means for transmitting," and "signal value," and remand this case for proper construction of these disputed claim terms.

Dated:   January 2, 2014

Respectfully submitted,

_W. Mark Mullineaux_ (signature)

W. Mark Mullineaux
ASTOR WEISS KAPLAN & MANDEL LLP
200 South Broad Street, Suite 600
Philadelphia, PA   19102
(215) 893-4956

(signature)

Kevin W. Goldstein
Kevin R. Casey
STRADLEY RONON STEVENS & YOUNG, LLP
30 Valley Stream Parkway
Malvern, PA   19355
(610) 640-5800

## **Certification of Compliance**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure
and Federal Circuit Rule 32, the undersigned certifies that the foregoing brief
complies with the type-volume limitation as provided under Rule 32(a)(7)(C) of
the Federal Rules of Appellate Procedure.   As provided by the word processing
system used to prepare this brief, the number of words in this brief is 9,748, not
including the certificate of interest, table of contents, table of abbreviations,
statement of related cases, table of authorities, certificates of counsel, addendum to
this opening brief, and certificate of service.



/s/ Kevin W. Goldstein
Kevin W. Goldstein

# 2007138   v. 1

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the

foregoing Opening Brief and Addendum of Plaintiff-Appellant John R. Gammino

was caused to be e-filed with the Clerk of Court for the U.S. Court of Appeals for

the Federal Circuit using the Court's CM/ECF System, and was served upon the

below noted counsel of record on January 2, 2014, through the Court's CM/ECF

System and by overnight courier at the address shown.

> John J. Cotter
> Solandra Craig
> K&L Gates LLP – Boston
> State Street Financial Center
> One Lincoln Street
> Boston, MA 02111-2950


> /s/ Kevin W. Goldstein
> Kevin W. Goldstein

# 2007138   v. 1