NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN R. GAMMINO,**
*Plaintiff-Appellant,*

v.

**SPRINT COMMUNICATIONS COMPANY, L.P.,
SPRINT SPECTRUM L.P., AND
VIRGIN MOBILE USA, L.P.,**
*Defendants-Cross Appellants.*

---

2013-1636, 2014-1016

---

Appeals from the United States District Court for the Eastern District of Pennsylvania in No. 2:10-CV-2493-CMR, Judge Cynthia M. Rufe.

---

Decided: August 15, 2014

---

GINA M. STOWE, Stradley Ronon Stevens & Young, LLP, of Malvern, Pennsylvania, argued for plaintiff-appellant. On the brief was KEVIN R. CASEY. Of counsel was JEFFREY M. LUTSKY. Of counsel on the brief was W. MARK MULLINEAUX, Astor Weiss Kaplan & Mandel LLP, of Philadelphia, Pennsylvania.

JOHN J. COTTER, K&L Gates LLP, of Boston, Massachusetts, argued for defendants-cross appellants. With him on the brief were DAVID A. SIMONS and SOLANDRA J. CRAIG.

---

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

John R. Gammino ("Gammino") appeals from a stipulated judgment of noninfringement following a decision of the United States District Court for the Eastern District of Pennsylvania construing claims 8–14, 22–28, and 35–41 of U.S. Patent 5,809,125 (the "'125 patent"). *See Gammino v. Sprint Commc'ns Co.*, No. 10-2493, 2013 WL 3343661 (E.D. Pa. July 2, 2013) (claim construction order); *Gammino v. Sprint Commc'ns Co.*, No. 10-2493, ECF No. 161 (E.D. Pa. Aug. 23, 2013) (stipulated judgment).

Sprint Communications Company, L.P., Sprint Spectrum L.P., and Virgin Mobile USA, L.P. (collectively "Sprint") conditionally cross-appeal from the district court's decision denying Sprint's motion for summary judgment of invalidity. *See Gammino* v. *Sprint Commc'ns Co.*, No. 10-2493, 2011 WL 3240830 (E.D. Pa. July 29, 2011). Because the court did not err in construing the claims, we affirm the judgment of noninfringement and therefore do not reach Sprint's conditional cross-appeal concerning invalidity.

BACKGROUND

Gammino is the named inventor and owner of the '125 patent directed to devices and methods for blocking potentially fraudulent international access calls, such as those made from public phones using a stolen calling card or via a private branch exchange ("PBX") system after an unauthorized access to the system. '125 patent, at [57] (abstract). An international access call can be identified

by the sequence of numbers dialed by the caller. The numbers in the sequence can be divided into groups, or pluralities, with each plurality conveying specific information. For example, a caller may dial "101-XXXX-011+" followed by a country code and line number. In that sequence, the first plurality "101" indicates that the call is an access call to be routed to a carrier other than the default carrier; the second plurality "XXXX" identifies the selected carrier; and the third plurality "011" signals that the call is an international call billable to the caller. If the third plurality is "01" instead, then the call becomes an operator-assisted call billable to a calling card or to the recipient.

The '125 patent describes methods and devices for blocking international access calls if, for example, the first and third pluralities of a dialing sequence are identified to match predetermined digits. *Id.* col. 2 ll. 43–50. In one exemplary embodiment shown in figure 1A below, a user inputs digits into a phone's keypad 110, which is detected by a decoder 120. *Id.* col. 3 ll. 58–60, 63–64. A microprocessor 130 examines the sequence of the digits, and if particular digits appear at particular positions in the sequence, then the microprocessor causes switch 150 to open, thus disconnecting the call. *Id.* col. 4 ll. 29–33.



FIG. 1A

*Id.* fig. 1A.

Figures 3A and 3B illustrate further embodiments, in which a PBX system 310 and a PC system 360 containing a decoder 330 and a signaling device 340 are connected to telecommunications lines 350. *Id.* col. 8 ll. 43–67. The PC system evaluates the dialing sequence of a call and elects to disconnect the call, if appropriate, by opening switch 370.



FIG. 3B

*Id.* fig. 3B.

At issue in this appeal are independent claims 8, 22, and 35, as well as dependent claims 9–14, 23–28, and 36–41. Claim 8 is representative of apparatus claims 8–14 and reads as follows:

> 8. *Telecommunications apparatus* for *selectively enabling* establishment of a telephone call to a telephone number having a central office exchange code via a communications pathway, said *telecommunications apparatus* being capable of transmitting a dialing sequence which includes a first plurality of dialing signals followed by a second plurality of dialing signals followed by a third plurality of dialing signals, said *telecommunications apparatus* comprising:
>
> *means for receiving* said dialing sequence prior to receiving said central office exchange code;
>
> *means for evaluating* said third plurality of dialing signals in a location in said dialing sequence used for international dialing by determining if said third plurality of dialing signals are used to accomplish international dialing;
>
> *means for transmitting said dialing sequence* to said communications pathway if
>
> said evaluated third plurality of dialing signals are determined to not be *predetermined signals which are used to accomplish international dialing* irrespective of said second plurality of dialing signals.

*Id.* col. 11 ll. 5–25 (emphases added). Claim 22 is representative of method claims 22–28 and 35–41 and reads as follows:

> 22. A method for *at least partially preventing operation of* a telecommunications device which is

>   capable of transmitting a plurality of *signal values*, said method comprising the steps of:
>
>   a) receiving said plurality of *signal values*;
>
>   b) comparing at least two of said plurality of *signal values* respectively located at predetermined locations used for international dialing with respective *predetermined digit sequences which are used for international dialing* and comparing a further *signal value* located at a further predetermined location with a further predetermined *signal value*, wherein a plurality of further *signal values* are located between said at least two of said plurality of *signal values* and said further *signal value*; and
>
>   c) *at least partially preventing operation of* said telecommunications device irrespective of said plurality of further *signal values* if said at least two of said plurality of *signal values* and any one of said respective predetermined digit sequences are found to be identical in step b) and if said further predetermined *signal value* is found to be identical to said further *signal value*.

*Id.* col. 12 ll. 39–60 (emphases added). Claims 9 and 23, which depend from claims 8 and 22 respectively, provide that the predetermined signals correspond to, or the digit sequences include, a "01" dialing sequence. *Id.* col. 11 ll. 26–28; col. 12 ll. 61–62. Furthermore, claims 13, 26, and 41, which depend from claims 8, 22, and 35 respectively, provide that the predetermined signals or sequences used for international dialing are "one of a) an international access code and b) an international area code." *Id.* col. 11 ll. 45–48; col. 13 ll. 5–8; col. 14 ll. 40–43.

Gammino has asserted the '125 patent against other parties in the past. He sued Southwestern Bell Telephone, L.P. and SWBT Texas, LLC (collectively "SWB") in

2005 in the district court for the Northern District of Texas for infringement of forty-two claims in the '125 patent. SWB counterclaimed for a declaration of invalidity and noninfringement and moved for summary judgment on those grounds. While SWB's motion was pending, in response to the district court's request to narrow down the claims to simplify the case, Gammino filed an amended disclosure document purportedly withdrawing claims 8, 10–14, 22, 24–28, and 35–41 from his infringement contentions. The Texas court then granted summary judgment of invalidity, holding that the "asserted claims" were invalid under 35 U.S.C. § 102(b) because the accused products were prior art and thus Gammino's own infringement allegations invalidated his patent claims. *Gammino v. Sw. Bell Tel., L.P.*, 512 F. Supp. 2d 626, 646 (N.D. Tex. 2007), *aff'd*, 267 F. App'x 949 (2008) (affirming the invalidity ruling only). The district court, however, did not specify which claims in the '125 patent it considered "asserted" and therefore invalidated. In the alternative, the court granted summary judgment of noninfringement after it construed the claims in the '125 patent, including the term "preventing" in claims 22 and 35 as requiring blocking *all* international calls. *Id.*

In 2010, Gammino sued Sprint in the district court for the Eastern District of Pennsylvania, asserting that Sprint infringed claims 8–14, 22–28, and 35–41 of the '125 patent. Sprint moved for summary judgment of invalidity, arguing that claims 8, 10–14, 22, 24–28, and 35–41 had been invalidated in the SWB litigation despite Gammino's attempt to withdraw those claims. The district court denied Sprint's motion, holding that there was insufficient evidence to conclude that those claims were specifically invalidated by the Texas court. *Gammino*, 2011 WL 3240830, at *8.

The district court then construed several claim limitations. *Gammino*, 2013 WL 3343661, at *13–14. First, the court construed all of the following terms as requiring

blocking *all*, rather than *selected*, international access calls: (i) "selectively enabling" and "transmitting [or transmits] said dialing sequence" of claims 8 and 10, (ii) "predetermined signals [or predetermined digit sequence, or test signal value sequences] which are used to accomplish [or for] international dialing" of claims 8, 22, and 35, and (iii) "means for preventing" and "at least partially preventing operation of" of claims 14, 22, 28, 35, and 38. *Id.* at *6. The court noted that its construction was consistent with the intrinsic evidence as well as the prior construction by the Texas court, which the court regarded as non-binding but persuasive authority. *Id.* at *6–7. The court also reasoned that Gammino's proposed construction of selective disablement of some, but not all, international access calls was "completely inconsistent" with the representations he made to the United States Patent and Trademark Office ("PTO") during prosecution of the '125 patent that his claimed invention blocked all international calls in order to distinguish prior art including U.S. Patent 4,577,066 of Bimonte ("Bimonte"). *Id.* at *6.

Secondly, the court construed the term "telecommunications apparatus" in claims 8–14 and the related means-plus-function structural elements, "means for receiving," "means for evaluating," and "means for transmitting," and concluded that the limitation "telecommunications apparatus" requires a telephone or telecommunications device and interface unit to be "located outside of an external network (or on the same side of a commercial telecommunications network)." *Id.* at *13–14. In reaching that conclusion, the court reasoned that "the specification is clear that digit sequences are analyzed to determine if they are international access code calls before being transmitted to a telecommunications line" and that "each embodiment of the claim discloses a system on one side of the telecommunications line." *Id.* at *9–10 & n.54.

Finally, the court construed "signal value" in claims 22 and 35 and related dependent claims to mean "a dual-

tone multi-frequency ('DTMF') analog signal transferred by hertz tones" to be consistent with the constructions initially proposed by both parties in their Joint Statement on Disputed Claim Terms and Gammino's prior arguments made in opposing Sprint's invalidity motion. *Id.* at \*14; *Gammino v. Sprint Commc'ns Co.*, No. 10-2493, ECF No. 105, at 7–8 (E.D. Pa. Sept. 22, 2011) (joint statement); ECF No. 89, at 7 (E.D. Pa. May 5, 2011) (Gammino's brief arguing that claims 22 and 35 recited "signal values which are transferred by hertz tones"); ECF No. 87, at 4 (E.D. Pa. Apr. 20, 2011) (Gammino's sworn declaration stating the same). Despite those prior statements, one month after the court's deadline for filing the joint statement and two weeks before the *Markman* hearing, Gammino moved to expand his proposed construction to include electrical, optical, and digital signals in an attempt to cover Sprint's accused digital devices. *Gammino*, 2013 WL 3343661, at \*2 n.24; *Gammino v. Sprint Commc'ns Co.*, No. 10-2493, ECF No. 102 (E.D. Pa. Sept. 9, 2011) (scheduling order). The court denied Gammino's motion because his amendment "came too late in the litigation" and was inconsistent with the definition he previously advanced in the litigation. *Gammino*, 2013 WL 3343661, at \*2 n.24.

After the court issued its *Markman* ruling, the parties stipulated to a judgment of noninfringement. Gammino appeals from that judgment, challenging the court's claim construction. Sprint conditionally cross-appeals from the denial of its motion for summary judgment of invalidity. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Claim Construction

A patent is a fully integrated written instrument and the claims must be read in view of the specification of which they are a part. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). A court should also

consult the patent's prosecution history, which, like the specification, provides evidence of how the PTO and the inventor understood the claimed invention. *Id.* at 1317. In reviewing those sources, if the specification or prosecution history defines a claim term, then that definition shall apply even if it differs from the term's ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366–67 (Fed. Cir. 2002). Moreover, if a patentee makes a clear and unambiguous disavowal of claim scope during prosecution, that disclaimer informs the claim construction analysis by "narrow[ing] the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). Likewise, the definition of a claim term can be affected through repeated and definitive remarks in the written description. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006).

A

We first consider the construction of the claim terms (i) "selectively enabling" and "transmitting [or transmits] said dialing sequence," (ii) "predetermined signals [or predetermined digit sequence, or test signal value sequences] which are used to accomplish [or for] international dialing," and (iii) "means for preventing" and "at least partially preventing operation of." Gammino argues that the court erred in construing those limitations as requiring blocking *all* international access calls. According to Gammino, the claims only require blocking *selected* international access calls having dialing sequences that match a predetermined set of digit sequences. Gammino contends that the doctrine of claim differentiation compels that interpretation because otherwise dependent claims such as claims 9 and 13 are rendered superfluous. Gammino argues that the exemplary dialing sequences disclosed in the specification of the '125 patent further

support his construction.  Gammino also maintains that the statements made during prosecution of the '125 patent were taken out of context and did not constitute a clear and unequivocal disavowal of claim scope.

Sprint responds that those claim limitations require blocking all international access calls because, during prosecution, Gammino repeatedly distinguished prior art that did not block all international calls and eventually confirmed and acquiesced to the examiner's understanding that his claimed invention blocks all international calls.  Sprint contends that those extensive prosecution statements were not taken out of context.  Sprint also responds that the court's construction is consistent with the specification.

We agree with Sprint and the district court that the contested claim limitations require blocking all international access calls.  During prosecution of the '125 patent, the PTO examiner repeatedly rejected Gammino's application in view of Bimonte.  Gammino sought to distinguish Bimonte on multiple occasions by representing to the examiner that his invention would block a call upon a determination that the call is international.  *E.g.*, J.A. 280–81 ("[I]f certain signals in the dialing sequence are determined to be used for international dialing, then prevent the call . . . if, while determining whether certain signals in the dialing sequence are used for international dialing, certain signals in the dialing sequence are determined to not be used for international dialing then allow the call.") (emphases omitted); J.A. 332 ("If Applicant's invention 'finds' international dialing digits, then establishment of the call is prevented."); J.A. 355 ("If the digits in the third plurality of digits are digits which are used for international dialing then the call is prevented."); J.A. 356–57 ("Thus, my claimed invention restricts dialing of international calls based upon a determination that the dialed call is an international one.").

In light of Gammino's statements, the examiner understood that the claimed invention would block all international calls. J.A. 414–15 (The "claimed invention . . . prevents all international calls (every single international call is prevented)."). Gammino confirmed and acquiesced to the examiner's understanding by stating that "the fact the Applicant's claimed invention will block ALL international calls is irrelevant to the decision of patentability of the claimed invention," J.A. 472 (emphasis in original), and continued to make similar unqualified arguments in subsequent responses. *E.g.*, J.A. 566, 569, 778, 780; *see also* J.A. 771 ("If the third plurality of dialing digits are determined to be dialing digits which are used for international dialing, and if the third plurality of dialing digits are in a location in the dialing sequence where they are used for international dialing, the call is prevented.") (emphases omitted). Given the extensive file history, we agree with the district court's conclusion that Gammino's own representations to the PTO established that his invention blocks all international access calls. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

Gammino now contends that the examiner and Gammino did not specifically discuss international *access* calls during prosecution and that his reference to "all international calls" was only intended to mean that the invention "is blocking all international calls ('good' and 'bad')." Appellant's Br. 38. We disagree that his prosecution statements have such limited import. First, it is clear that the '125 patent only addresses *access* calls, those that begin with three pluralities of digits such as "101-XXXX-011+," rather than *direct* calls beginning with one plurality of digits such as "011+." The examiner and Gammino therefore used the phrase "international calls" as a shorthand for "international access calls" during prosecution.

Secondly, while it is true that a prosecution disclaimer requires "clear and unambiguous disavowal of claim scope," *Storage Tech. Corp. v. Cisco Sys., Inc.,* 329 F.3d 823, 833 (Fed. Cir. 2003), Gammino's repeated and unqualified statements that his claimed invention will block "all international calls" extend beyond merely illuminating "how the inventor understood the invention," *Phillips,* 415 F.3d at 1317, and provide an affirmative definition for the disputed claim terms. Given such definitive statements during prosecution, the interested public is entitled to conclude that the claimed devices and methods of the '125 patent block all international access calls.

Moreover, the court's construction is consistent with the claim language, the specification, and other portions of the file history. Nowhere in the specification or the file history did Gammino state that his claimed invention only blocks a *selected* subset of international access calls. The dialing sequences disclosed in the specification are characterized as "exemplary" and the specification further teaches that "[b]y blocking a telephone call when *any* of these exemplary digit sequences are entered, the unauthorized use of calling card numbers for long distance and international calls may be effectively prevented." '125 patent col. 5 ll. 5–34 (emphasis added). Likewise, dependent claims such as claims 9 and 13 do not compel a different construction. As we have held, the doctrine of claim differentiation only creates a presumption that can be overcome by contrary evidence in the written description and file history. *Andersen Corp. v. Fiber Composites, LLC,* 474 F.3d 1361, 1369–70 (Fed. Cir. 2007). And that is the case here.

We therefore conclude that the limitations (i) "selectively enabling" and "transmitting [or transmits] said dialing sequence" of claims 8 and 10, (ii) "predetermined signals [or predetermined digit sequence, or test signal value sequences] which are used to accomplish [or for] international dialing" of claims 8, 22, and 35, and (iii)

"means for preventing" and "at least partially preventing operation of" of claims 14, 22, 28, 35, and 38 require blocking all, rather than selected, international access calls.

B

We next consider the construction of "telecommunications apparatus" and its related means-plus-function structural elements. Gammino argues that the district court erred in concluding that the telephone or telecommunications device and interface unit must be located outside of an external network. Gammino asserts that the claims contain no such limitation on location. According to Gammino, the means-plus-function structures of the "telecommunications apparatus" may be located anywhere that is connected to or along one or more telecommunications lines within the external network and separately from the telephone. Gammino also contends that the court did not properly consider all of the exemplary embodiments in the '125 patent, including those of figures 3A and 3B. Sprint responds that there is no disclosure in the specification or figures placing the "telecommunications apparatus" or interface unit at a central switching office or elsewhere within a carrier's external network. Sprint contends that the specification and figures, including figures 3A and 3B, only disclose devices including a processor and switch located on the telephone side of the network to block calls before they are transmitted to an external commercial network.

We agree with Sprint that the district court did not err in construing "telecommunications apparatus" and its means-plus-function structural elements. The primary dispute between the parties concerning those claim terms was the location of the apparatus, and Gammino proposed a construction that allows the apparatus to be located in devices including switches within the external network. *Gammino*, ECF No. 105, at 6. After examining the disclo-

sures of the specification including the embodiments illustrated in figures 1A, 1B, 2A, 2B, 2C, 3A, and 3B, the court determined that "each embodiment of the claim discloses a system on one side of the telecommunications line" and therefore construed "telecommunications apparatus" to require a telephone or telecommunications device and interface unit located *outside* of an external network or *on the same side* of a commercial telecommunications network. *Gammino*, 2013 WL 3343661, at *10 & n.54. We find no reversible error in that determination.

Figures 3A and 3B do not compel a different construction. In those figures, the PC system 360, which contains detector 330 and signaling device 340, is depicted as connected to incoming phone lines 350 of the PBX system 310. As explained in the '125 patent, fraudulent callers may attempt to access a company's PBX system to place international access calls through the PBX system in order to charge the calls to the company. '125 patent, at [57]. Even assuming that figures 3A and 3B illustrate further embodiments of the telecommunications apparatus of claim 8, the PC system blocks an international access call by disrupting the incoming phone line of the PBX system, not at a central switching office or elsewhere within a commercial carrier's external network. Those figures accordingly do not support Gammino's proposed construction.

We therefore conclude that the district court did not err in construing the term "telecommunications apparatus" of claims 8–14 and its related means-plus-function structural elements.

C

We further consider the court's construction of the claim term "signal value" as "a dual-tone multi-frequency ('DTMF') analog signal transferred by hertz tones." Gammino contends that the court erred in adopting the construction initially proposed by both parties and in

denying his motion to amend the proposed construction. Gammino argues that the court's prior ruling on validity was not premised on any interpretation of "signal value" and that Sprint would not have been prejudiced. Sprint responds that the court did not abuse its discretion in denying Gammino's motion to amend because Gammino failed to show good cause for the late amendment after he had argued a narrow interpretation earlier in the litigation.

We agree with Sprint that the district court did not abuse its discretion in denying Gammino's motion and did not err in adopting the construction jointly proposed by the parties. In its September 2011 scheduling order, the court set the deadline for the parties' joint statement concerning claim construction. More than one month after that deadline and more than 17 months after the litigation had commenced, Gammino moved to expand his proposed construction, but failed to make a showing of good cause for the late amendment.

Moreover, the court correctly found that allowing Gammino to change his position on the definition of "signal value" would be inequitable and would result in prejudice to Sprint. In his opposition to Sprint's motion for summary judgment of invalidity, Gammino argued that claims 22 and 35 were patentably distinct from claim 29, which he conceded had been asserted against SWB and had been determined to be invalid. Gammino stated in a sworn affidavit and argued in his briefs that, unlike claim 29, claims 22 and 35 included the limitation "signal value," which he interpreted as analog signals transferred by hertz tones. *Gammino*, ECF No. 87, at 4; ECF No. 89, at 7. Accordingly, the court did not abuse its discretion in declining to allow Gammino to adopt an expanded construction of "signal value" that is inconsistent with the definition he previously advanced and swore to in opposing Sprint's motion.

We have considered Gammino's additional arguments challenging the district court's construction of claim terms but find them unpersuasive. For the foregoing reasons, we affirm the district court's construction of all of the claim terms as well as the judgment of noninfringement.

## II. Cross-Appeal

Sprint only conditionally cross-appeals from the denial of summary judgment of invalidity "[i]n the event this [c]ourt reverses the judgment of noninfringement." Cross-Appellant's Br. 14–15. In light of our decision affirming the judgment of noninfringement, we do not address the merits of the cross-appeal and therefore express no opinion on the district court's validity determination with respect to claims 8, 10–14, 22, 24–28, and 35–41 of the '125 patent. *See Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1381 (Fed. Cir. 2005) (affirming noninfringement judgment without addressing the cross-appeal concerning invalidity), citing *Power Mosfet Techs., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1414 n.3 (Fed. Cir. 2004) (rejecting the argument that *Cardinal Chemical Co. v. Morton International Inc.*, 508 U.S. 83 (1993) requires review of conditionally appealed invalidity finding). These issues were raised only in connection with the conditional cross-appeal.

## CONCLUSION

For the foregoing reasons, we affirm the district court's claim construction and the judgment of noninfringement in favor of Sprint and do not reach Sprint's conditional cross-appeal concerning invalidity.

**AFFIRMED**